# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOSEPH WAYNE EVANS, JR.,

      **Petitioner,**

  v.           **Case No. 15-CV-991**

WARDEN GARY BOUGHTON,

      **Respondent.**

## REPORT AND RECOMMENDATION

### 1. Procedural History

On the morning of July 26, 2008, a Marinette County Sheriff's Deputy served Joseph Wayne Evans, Jr. with a temporary restraining order that Evans's wife, Dina, had obtained against him. (ECF No. 16-2 at 47 (all citations reflect the ECF pagination).) Dina sought the temporary restraining order because Evans said he was "going to get a gun and put her six feet under." (ECF No. 16-2 at 47.) Less than twelve hours later, Evans shot and killed Dina.

Following a jury trial in September 2009, where his defense was that the shooting was an accident, Evans was convicted of first-degree intentional homicide and

sentenced to life in prison without the possibility of extended supervision. (ECF No. 16-2 at 37-45.)

## 1.1. Direct Appeal

Evans appealed his conviction (ECF No. 16-4 at 272-313 (initial brief)), and the Wisconsin Court of Appeals on April 26, 2011, affirmed the judgment of the circuit court (ECF No. 1-2 at 32-42).

Evans had argued that the trial court erred in admitting the testimony of Lorea[1] Saunier, who dated Evans 25 years earlier when he was 18 and she was 13. Lorea testified that Evans was abusive, violent, threatening, and controlling in their relationship, and she referred to certain specific instances of such conduct. (ECF No. 1-2 at 33-34, ¶¶ 5-8.) Evans also argued that the trial court erred in admitting the testimony of an expert on domestic abuse. (ECF No. 1-2 at 40-41, ¶ 22.) The court concluded that the trial court reasonably exercised its discretion when it decided to admit the evidence. (ECF No. 1-2 at 38, ¶ 16; 42, ¶ 25.)

On September 1, 2011, the Wisconsin Supreme Court denied Evans's petition for review. (ECF No. 16-4 at 483.)

## 1.2. State Petition for a Writ of Habeas Corpus (*Knight* Petition)

In October 2011 Evans filed a petition for a writ of habeas corpus with the Wisconsin Court of Appeals alleging that his appellate counsel was ineffective for not

---

[1] Evans refers to her as "Laurie." Her name is actually "Lorea." (ECF No. 16-9 at 476-77.)

presenting 18 specific issues on appeal. (ECF No. 16-5 at 5-53.) Evans amended the petition the following month, paring the claims of alleged ineffectiveness down to 12. (ECF No. 16-5 at 178-217.) He alleged his appellate counsel was ineffective because he failed to raise the following arguments on appeal: (1) the trial court erred in admitting a statement Evans made to police that was obtained in violation of *Miranda* and was otherwise involuntary (ECF No. 16-5 at 189-96); (2) the trial court erred in denying his motion for change of venue (ECF No. 16-5 at 196-97); (3) the trial court erred by admitting the recorded statement of Evans's brother, Mike Evans (ECF No. 16-5 at 197-99); (4) the trial court erred in admitting a letter Evans wrote to a woman named Jessica Heinze (ECF No. 16-5 at 199-200); (5) the prosecutor inappropriately elicited Lorea's testimony regarding Evans's suicide attempt (ECF No. 16-5 at 200-01); (6) trial counsel was ineffective for not seeking to suppress evidence obtained pursuant to a search warrant (ECF No. 16-5 at 201-02); (7) trial counsel was ineffective for withdrawing a motion for mistrial regarding a courthouse door locked during a portion of Evans's jury trial (ECF No. 16-5 at 203-04); (8) trial counsel was ineffective for failing to request an evidentiary hearing to explore a potential conflict of interest between the special prosecutor and local prosecutors (ECF No. 16-5 at 204-06); (9) trial counsel was ineffective for failing to present Dina's toxicology report (ECF No. 16-5 at 206-07); (10) trial counsel was ineffective for failing to request gun powder residue test results of Dina's hands (ECF No. 16-5 at 209); (11) trial counsel was ineffective for failing to object

to the testimony of Dina's sister, Tracy Brabant, regarding what she heard Dina tell Evans (ECF No. 16-5 at 208-09); and (12) trial counsel was ineffective for failing to call a police officer to testify about Evans's concerns for Dina's health after Evans shot her (ECF No. 16-5 at 209-10).

The court of appeals denied the petition on February 7, 2013. (ECF No. 16-5 at 504-12.) The court rejected Evans's claim that appellate counsel should have appealed the trial court's decision to admit Evans's statement to the police:

> Evans does not address the basis for the court's decision to deny the suppression motion and, therefore, fails to establish that the trial court erred by applying the public safety and rescue doctrine exceptions to Miranda. The petition consequently fails to show that this challenge to the denial of his suppression motion was clearly stronger than the issues counsel raised on appeal.

(ECF No. 16-5 at 508.) The court also stated that Evans had failed to show that his statement was otherwise involuntary. (ECF No. 16-5 at 509.) The court further concluded that, because Evans failed to show that the trial court erred in denying his motion for change of venue, his appellate counsel was not ineffective for not raising the issue on appeal. (ECF No. 16-5 at 510.)

Nor could Evans show that his appellate counsel was ineffective for not appealing the admission of the recorded statement of Mike Evans. (ECF No. 16-5 at 510.) The court concluded that, because Mike testified and was subject to cross-examination, Evans's right to confrontation was not undermined. (ECF No. 16-5 at 511.) The court also concluded that the trial court had reasonably exercised its discretion to

admit the letter Evans wrote to Jessica Heinze, and as such appellate counsel was not ineffective for not raising the issue on appeal. (ECF No. 16-5 at 511-12.)

As to Evans's claim regarding Lorea's testimony, the court concluded that Evans had litigated that claim on direct appeal and could not relitigate it in a subsequent postconviction proceeding. (ECF No. 16-5 at 506.) And although Evans's attorney on appeal failed to respond to the state's harmless error argument, because the court of appeals concluded on direct appeal that the claims failed on their merits, Evans could not show he was prejudiced. (ECF No. 16-5 at 506.)

Finally, the court noted that a petition for a writ of habeas corpus in the court of appeals was not the proper means for raising claims of ineffective assistance of trial counsel. (ECF No. 16-5 at 505-06.)

The Wisconsin Supreme Court denied review on June 12, 2013. (ECF No. 16-6 at 4.)

### 1.3. First Motion for Post-Conviction Relief Under Wis. Stat. § 974.06

Evans also unsuccessfully sought post-conviction relief in the circuit court pursuant to Wis. Stat. § 974.06. Evans appealed that decision on June 30, 2013. (ECF No. 16-6 at 10-68.)

On January 7, 2014, the court of appeals affirmed the decision of the circuit court. (ECF No. 16-6 at 236-43.) The court of appeals concluded that "Evans' allegations are conclusory, unsupported by factual assertions that would entitle him to relief, and

contrary to law." (ECF No. 16-6 at 238, ¶ 9.) Specifically, the court of appeals found no error in the trial court's decision to allow Dina's sister to testify that, in response to Evans's statement that they were still married, Dina said loudly, "[W]ell, not for long because I am divorcing you and just … get that through your head and … leave me alone." (ECF No. 16-6 at 239, ¶ 10.) Evans appeared to become agitated and left, but returned and destroyed Dina's property. (ECF No. 16-6 at 239, ¶ 10.) The court of appeals concluded that Dina's statement was not hearsay because it was offered to show the impact of the statement on Evans's behavior. (ECF No. 16-6 at 239, ¶ 11.) Alternatively, the statement fit into the excited utterance and residual exceptions to the hearsay rule. (ECF No. 16-6 at 239, ¶ 12.)

The court of appeals also rejected Evans's suggestion that the prosecutor improperly withheld gunshot residue test results of Dina's hands. (ECF No. 16-6 at 240, ¶ 13.) It noted that, although the autopsy report stated that Dina's hands were swabbed, Evans's failed to demonstrate that any testing was done. (ECF No. 16-6 at 240, ¶ 13.) And even if any testing had been done, it was unlikely to have aided the defense because it was undisputed that Dina was shot at close range and may have had residue on her hands even if the shooting had been intentional. (ECF No. 16-6 at 240, ¶ 14.)

The court of appeals rejected as "conclusory and unsupported by any factual assertion that would entitle him to relief" Evans's request that the court set aside its

prior ruling regarding the admission of other acts evidence and reconsider it as prosecutorial misconduct. (ECF No. 16-6 at 240, ¶ 15.)

It also rejected a variety of arguments that his trial counsel was ineffective. The lead prosecutor claimed that no plea offer was ever contemplated, much less tendered, and therefore no basis existed for Evans's assertion that his trial counsel was ineffective for failing to communicate a plea offer. (ECF No. 16-6 at 240-41, ¶ 16.) In addition, Evans failed to support his argument that evidence seized pursuant to a search warrant would have been suppressed had trial counsel filed a motion to suppress. (ECF No. 16-6 at 241, ¶ 17.) Further, it was appropriate for trial counsel to withdraw his motion for a mistrial because, although one door to the courthouse was locked near the end of the first day of trial, the other doors remained open, and therefore the public was never denied access to the trial. (ECF No. 16-6 at 241, ¶ 19.) Moreover, no basis existed for investigating a potential conflict of interest between Evans's former attorneys and the local district attorney's office, which they joined; the case was prosecuted by a special prosecutor, who said he did not receive any information from Evans's former attorneys. (ECF No. 16-6 at 241-42, ¶ 20.)

The court further concluded that Dina's toxicology report was irrelevant. (ECF No. 16-6 at 242-43, ¶¶ 21-23.) Finally, the court rejected Evans's request for a new trial in the interest of justice.

The Wisconsin Supreme Court denied review on May 22, 2014. (ECF No. 16-6 at 272.)

### 1.4. Second Motion for Post-Conviction Relief Under Wis. Stat. § 974.06

Evans again unsuccessfully sought post-conviction relief in the circuit court pursuant to Wis. Stat. § 974.06 and appealed that decision on August 12, 2014. (ECF No. 16-7 at 6-46.) Evans argued that the trial court erred in admitting statements he made to a police officer. (ECF No. 16-7 at 16-26.) He also argued that his trial counsel was ineffective for not calling as witnesses Lorea's brother, Robert Todd Saunier, Lorea's mother, Sharon Saunier, and Matthew and April Colangelo. (ECF No. 16-7 at 26-34.) He also argued that his trial counsel should have objected to a question during the prosecutor's voir dire (ECF No. 16-7 at 34-36) and to an assertion during the prosecutor's opening statement (ECF No. 16-7 at 36-40).

The court of appeals summarily affirmed the circuit court on April 16, 2015. (ECF No. 16-7 at 243-44.) It found that, because Wisconsin law permits a defendant to file only one motion for post-conviction relief, Evans's claims were procedurally barred as a result of him having already filed a motion for post-conviction relief. (ECF No. 16-7 at 244.) It rejected Evans's arguments that he had sufficient reason for filing a second motion. He failed to show that he was unaware of these claims at the time he filed his prior motion, and there could not be any ineffective assistance of counsel because Evans

represented himself during his prior motion for post-conviction relief. (ECF No. 16-7 at 244.)

The Wisconsin Supreme Court denied review on August 5, 2015. (ECF No. 16-7 at 260.)

### 1.5. Federal Habeas Petition

Evans filed the present petition on August 18, 2015. (ECF No. 1.) The Honorable Pamela Pepper screened the petition and ordered the respondent to submit an answer. (ECF No. 5.) The respondent answered the petition on January 26, 2016 (ECF No. 16) and submitted a brief in opposition[2] on May 6, 2016 (ECF No. 22). Evans replied on May 12, 2016. (ECF No. 23.) On May 4, 2018, Judge Pepper referred Evans's petition to this court pursuant to 28 U.S.C. § 636(b).

## 2. Legal Standard

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court generally may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an

---

[2] Although 30-pages in length, which is the page limit set by Judge Pepper (ECF No. 5 at 18), in contravention of General Local Rule 5(a)(5) the respondent's brief was single-spaced. Rather than resorting to single-spacing, the proper course would have been for counsel to seek leave to file an oversized brief. Given the multitude of issues Evans presents, good cause certainly would have supported granting the respondent permission to file an oversized brief. Resorting to single-spaced text, in addition to violating the court's local rule, simply makes it needlessly harder for the court to read the respondent's brief.

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)).

### 3. Analysis

#### 3.1. The Lorea Saunier "Other Acts" Evidence

The trial court permitted the state to admit evidence that, when Evans was 18-years-old, he battered his then-13-year-old girlfriend, Lorea Saunier, threatened a male whom he suspected of being interested in her, shot off his finger when he thought Lorea would break up with him, and attempted suicide when she did break up with him. (ECF No. 1 at 7.) Evans argues that this inflammatory evidence violated his right to due process and made it likely that the jury convicted him out of spite. (ECF No. 1 at 6.)

The Wisconsin Court of Appeals concluded that the trial court appropriately exercised its discretion under controlling Wisconsin law, as set forth in *State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998), and appropriately instructed the jury as to the limited purpose of this other acts evidence. (ECF No. 1-2, at 35-38, ¶¶ 9-16.) Alternatively, it concluded that any error in admitting the evidence was harmless because it was relatively insignificant in the scope of the trial and the evidence of Evans's guilt was overwhelming. (ECF No. 1-2 at 38-40, ¶¶ 17-21.)

The respondent argues that Evans did not fairly present to the Wisconsin courts any federal constitutional claim regarding the admission of Lorea's testimony. *See Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016) (discussing fair presentment requirement). Fair presentment requires the petitioner to have presented "'[b]oth the operative facts and controlling law' to the state court." *Thomas*, 822 F.3d at 385 (quoting *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013)). In assessing whether Evans fairly presented his claim to the Wisconsin courts the court focuses on four factors:

> (1) whether the habeas petitioner relied on federal cases that engage in constitutional analysis, (2) whether the petitioner relied on state cases that apply constitutional analysis to similar facts, (3) whether the petitioner framed the claims in terms so particular as to call to mind a specific constitutional right, and (4) whether the petition alleges a pattern of facts within the mainstream of constitutional litigation.

*Thomas*, 822 F.3d at 385 (quoting *McDowell*, 737 F.3d at 482).

Although Evans contends he satisfied the fair presentment requirement (*see, e.g.*, ECF No. 23 at 3-4, 5), he does not identify where he presented this claim to the state courts as a federal constitutional claim. A review of his brief to the Wisconsin Court of Appeals makes it clear that Evans's claim regarding the Lorea Saunier other acts evidence to the state court rested entirely on state law. (*See* ECF No. 16-4 at 286-303.) He cited decisions of only the Wisconsin Court of Appeals and the Wisconsin Supreme Court, never referring to the federal constitution or due process. (ECF No. 16-4 at 286-303.)

Even if the court were to look beyond this fundamental defect, Evans would not be entitled to habeas relief on this ground. Federal habeas relief is appropriate with respect to state evidentiary rulings only in extraordinary circumstances where the error was so prejudicial that it "compromised the petitioner's due process right to a fundamentally fair trial." *Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001). "This means that the error must have produced a significant likelihood that an innocent person has been convicted." *Id.*

The trial court's decision to permit Lorea Saunier to testify about Evans's conduct 25 years earlier was a reasonable exercise of discretion. By showing past instances of Evans's violent reactions to the prospect of losing a partner, it tended to rebut Evans's defense that he accidently shot Dina. Thus, the court does not find the decision erroneous, let alone an error so grave as to amount to a denial of due process.

### 3.2. Expert Evidence

The trial court permitted the state to introduce the opinion of an expert who testified that women who leave domestic abusers are at a much higher risk of being killed or the victim of the most severe kinds of violence. (ECF No. 1-2 at 41.) Evans argues that this testimony violated his due process rights because it amounted to an opinion on Evans's credibility and propensity to commit a crime. (ECF No. 1 at 7.)

As summarized by the court of appeals, Darald Hanusa, Ph.D., an "eminently qualified" expert regarding domestic abusers,

explained that women stay in abusive relationships out of fear that their partners will make good on threats to kill them, their children or themselves. He described the relationships as built on the male partner's "possessiveness and control" of the female through violence and threats, with homicide being the ultimate form of control. Hanusa also testified there is a progression from destruction of property to physical abuse. He noted that in these circumstances "when women leave their partner, they're at a 75 percent greater risk of being killed and 75 percent greater risk of the most severe kinds of violence." Hanusa stated that domestic batterers are masters of manipulation and good at making excuses about their abusive behavior. Hanusa also gave examples of "lethality" factors commonly found among the most risky domestic batterers, including prior acts and threats of violence, weapon access, victim access, dehumanizing the victim and lack of remorse.

(ECF No. 1-2 at 41, ¶¶ 23-24.) The court of appeals concluded:

Hanusa neither impermissibly usurped the jury's determination on Evans' credibility, nor offered an impermissible opinion on whether Evans fit the profile of a lethal domestic abuser. In fact, Hanusa refrained from providing an opinion on Evans' credibility or whether he met the "lethality" risk criteria. Hanusa simply provided a framework for evaluating properly admitted other acts evidence relating to a defendant's state of mind at the time of the alleged crime. An appropriate balance was reached by providing jurors information about the "lethality" risk factors characteristic of violent domestic abusers, so that the jurors could themselves evaluate whether such factors applied to Evans. The circuit court properly exercised its discretion in admitting Hanusa's expert testimony.

(ECF No. 1-2 at 42, ¶ 25 (internal citation omitted).)

The respondent argues that Evans did not include this claim in his petition for review to the Wisconsin Supreme Court. (ECF No. 22 at 14-15.) However, Evans did identify in his petition for review the following as one of the issues: "Whether the trial court abused its discretion in admitting expert testimony on behalf of the state

concerning domestic violence data and opinions concerning the propensities of abusers and victims?" (ECF No. 16-4 at 409.) Nonetheless, Evans's argument for review was limited to the question of the line between "character evidence" and other "other acts" evidence. (ECF No. 16-4 at 418.) Evans offered the alleged error regarding the admission of Hanusa's testimony to argue, "If there were any doubt about the unfair prejudice of admitting the Saunier evidence, it is erased by the admission of the Darald Hanusa 'expert' testimony." (ECF No. 16-4 at 420.)

For present purposes the court presumes that Evans sufficiently presented this claim regarding the admission of Hanusa's expert testimony to the Wisconsin Supreme Court. Nonetheless, Evans's claim fails for the same reason as his claim regarding Lorea Saunier's testimony—Evans did not fairly present this claim in terms of an alleged denial of a federal constitutional right. Evans challenged Hanusa's testimony solely as a matter of state law. And, beyond that, the court finds that the trial court's decision to permit the testimony was a reasonable exercise of discretion and, consequently, did not violate due process.

### 3.3. Ineffective Assistance of Trial Counsel[3]

To prevail on a claim of ineffective assistance of counsel a petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "On the performance prong, he 'must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (internal quotation marks omitted)). "On the prejudice prong, he must show that 'but for counsel's errors, there is a reasonable probability that the result would have been different.'" *Id.* (quoting *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016)). "As with the first prong, there is a presumption that the petitioner has not suffered prejudice." *Id.* (citing *Graf*, 827 F.3d at 584-85). Thus, the court's review of an ineffective assistance of counsel claim is "doubly deferential" when presented in a petition for a writ of habeas corpus. *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018) (quoting *Hinesley v. Knight*, 837 F.3d 721, 732 (7th Cir. 2016)).

---

[3] If is often unclear whether in state court Evans presented and exhausted particular claims as allegations of ineffective assistance of counsel or as direct claims of violations of constitutional rights. The respondent also argues that with respect to certain claims Evans failed to exhaust or otherwise fairly present the claim to state courts. To the extent there may be any ambiguity, it proves immaterial because ultimately the court concludes that Evans's claims fail on their merits both as direct claims and through the lens of a claim of ineffective assistance of either appellate or trial counsel. *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### 3.3.1. Plea Offer

Evans alleges that his attorney did not tell him that the state prosecutor offered to reduce the charge to first-degree reckless homicide in exchange for Evans's guilty plea. (ECF No. 1-1 at 7.) The court of appeals rejected this argument, stating:

> Evans fails to provide citations to the record on appeal that would demonstrate the existence of a plea offer. We will therefore not further consider the argument. In any event, the lead prosecutor confirmed in an affidavit to the circuit court that no offer was ever contemplated, let alone communicated to defense counsel.

(ECF No. 1-2 at 28-29, ¶ 16 (internal citation omitted).)

Aside from his own assertions, Evans offers nothing to support his claim that any such plea offer was made by the prosecutor. Absent proof that such a plea offer was ever made, Evans's claim that his trial counsel was ineffective for failing to relay the plea offer to him necessarily fails. Consequently, the court finds no error in the court of appeals' rejection of this claim.

### 3.3.2. Gunshot Residue Test

Evans contends that his trial counsel was ineffective for not investigating the results of a gunshot residue test that the police performed on Dina's hands. (ECF No. 1-1 at 8.) Evans argues that the test would have corroborated his defense that he accidentally shot Dina as she attempted to pull the gun out of his hand.

Evans presented this claim twice to the court of appeals. The first time it was as part of his *Knight* petition, whereby he alleged his appellate counsel was ineffective

because he failed to allege his trial counsel was ineffective for not investigating the gunshot residue test results. (ECF No. 1-2 at 7.) The court of appeals rejected this argument on procedural grounds. Evans had not supported his claim with the testimony of trial counsel, and thus a *Knight* petition was not the proper means for advancing the claim. (ECF No. 1-2 at 7.)

Evans presented the claim again as part of the litigation regarding his first motion for post-conviction relief pursuant to Wis. Stat. § 974.06. (ECF No. 16-6 at 53-55; *see also* 16-6 at 258.) The court noted that, although swabs of Dina's hands were collected, nothing in the record indicated that testing was performed. (ECF No. 1-2 at 28, ¶ 13.) The court continued:

> Even if such testing had occurred, the results would not likely have aided the defense. The evidence showed that the victim was shot at very close range, and therefore it was possible that gunpowder would appear on the victim regardless whether she touched the gun. Evans' arguments do not cause us to conclude that speculative gunpowder residue test results from the victim's hand swabs would be sufficient to undermine our confidence in a trial with otherwise overwhelming evidence of intentional homicide.

(ECF No. 1-2 at 28, ¶ 14.)

The court agrees with the conclusion of the court of appeals. Even if the swabs taken from Dina's hands had been tested for gunshot residue, the test results would not have been material to Evans's defense. It was undisputed that Dina was shot in the chest at close range. If it were possible to reliably conclude that gunshot residue was on Dina's hands, Evans has failed to demonstrate that this would suggest that she had been

reaching for the gun when it fired, as opposed to, for example, raising her hands in a defensive reaction to a gun being pointed at her or simply being in proximity to a gunshot.

### 3.3.3. Toxicology Report

Evans argues that his trial counsel was ineffective for not requesting an evidentiary hearing regarding the admissibility of Dina's toxicology results. Evans contends the toxicology results would have shown that Dina had drugs in her system, making it more believable that she had, as Evans says, grabbed the firearm. (ECF No. 1-1 at 8-9.)

The court of appeals concluded that Evans's argument regarding the relevance of the toxicology report was inconsistent with his own testimony. According to Evans's testimony, Dina was startled by seeing Evans with a gun and reacted by reaching for the gun; Evans offers no explanation for why the presence of drugs in Dina's system would have made his version of events more likely. (ECF No. 1-2 at 30-31, ¶¶ 21-23.)

The court finds no error in trial counsel's failure to investigate this matter. The court finds that any presence of controlled substances in Dina's blood following her death to be irrelevant to Evans's defense at trial.

### 3.3.4. Conflict of Interest

On March 15, 2009, Kent Hoffman moved to withdraw as counsel for Evans because he was offered a job in the Marinette County District Attorney's Office. DeShea

Morrow, who was originally second-chair defense counsel, then also accepted a position as an assistant prosecutor for Marinette County as of about April 20, 2009. (ECF No. 1-1 at 9.) Although two new attorneys were appointed to represent Evans, he alleges that Morrow met with his new attorneys and discussed his case after she became a prosecutor. Evans also argues that the appointed special prosecutor, David Wambach, should have recused himself because he had worked with Marinette District Attorney Allen Brey for nearly a year in the mid-1980s in Wood County. Evans believes his trial counsel should have requested an evidentiary hearing to investigate a conflict of interest between Evans's former attorneys and Wambach. (ECF No. 1-1 at 9.)

The court of appeals noted that the case was prosecuted by an appointed special prosecutor, not the local district attorney who hired Hoffman and Morrow. "[T]he special prosecutor, through an affidavit to the court, affirmatively stated that he did not receive any information from Evans' former attorneys. Evans thus fails to supply any facts that would support a finding of a conflict of interest." (ECF No. 1-2 at 30, ¶ 20.)

Evans has failed to demonstrate that any conflict of interest existed between the attorneys who prosecuted him and those who defended him. Therefore, the court of appeals correctly rejected this claim.

### 3.3.5. Right to a Public Trial

Evans alleges that the doors to the courthouse were locked for a portion of the first day of his trial. Evans's attorney moved for a mistrial. Instead of granting a mistrial,

the court ordered that the testimony taken during the time the doors may have been locked be repeated. Because Evans did not want this damaging testimony repeated to the jury, his attorney withdrew the motion for a mistrial. (ECF No. 1-1 at 10.)

Evans's trial was held in what is locally referred to as the annex portion of the Marinette County courthouse complex. The first day of trial ended at approximately 6:30 PM. (ECF No. 16-9 at 272.) The district attorney, who was not trying the case, returned to work at about that time and found the main door to the annex locked. (ECF No. 16-6 at 95.) He opened the door with his security card and propped the door open. (ECF No. 16-6 at 95.) He then went down the hallway to the handicap entrance, which is part of the original courthouse building connected to the annex, and confirmed that that door was unlocked. (ECF No. 16-6 at 96.)

It is unclear how the courthouse annex door ended up locked. It is the only door in the complex that is locked automatically by computer, and the county facilities director had programmed the door to remain unlocked from 7:30 AM through 7:30 PM for the entire week of Evans's trial. (ECF No. 16-6 at 107.) When the problem was recognized, the facilities director checked the computer and confirmed it was properly programmed. (ECF No. 16-6 at 108.)

In addition to the door that was locked, there is another public entrance to the annex and three more to the attached courthouse. (ECF No. 16-6 at 109.) Each of these doors must be locked manually, and the custodian in charge of locking the doors on the

first day of trial did not do so until about 7:00 PM after she noticed the trial was over. (ECF No. 16-6 at 147.)

The court of appeals concluded that there was no basis for a mistrial because "multiple doors to the courthouse remained open and the public was not excluded from the trial." (ECF No. 1-2 at 29, ¶ 19.)

The court finds no error in the court of appeals' conclusion. Although one entrance was apparently locked for a as much as two hours on the first day of trial, the public was able to access the court through four other doors. The locking of one door did not deny Evans his Sixth Amendment right to a public trial.

### 3.4. Ineffective Assistance of Appellate Counsel

"The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel but with a special gloss when the challenge is aimed at the selection of issues to present on appeal." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)) (internal citation omitted). "Appellate counsel is not required to raise every non-frivolous issue and her performance 'is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised.'" *Long v. Butler*, 809 F.3d 299, 312 (7th Cir. 2015) (quoting *Makiel*, 782 F.3d at 898). "Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult 'because the comparative strength of two claims is usually debatable.'" *Makiel*, 782 F.3d at 898

(quoting *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013)). A defendant alleging ineffective assistance of appellate counsel cannot demonstrate prejudice unless he can show that the unraised claim was meritorious. *Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014). Therefore, as a practical matter, when considering an ineffective assistance of counsel claim, it is often most efficient to focus on the merits of the argument not pursued.

### 3.4.1. Change of Venue

Evans argues that, in light of the local pretrial publicity associated with his case, the trial court erred in denying his motion for a change of venue or, in the alternative, for jurors from a different county. (ECF No. 1 at 8.) Evans presented this claim for the first time in his 2011 petition for a writ of habeas corpus. (ECF No. 16-5 at 196-97; *see also* ECF Nos. 16-5 at 351-55 (state's response); 1-2 at 11-12 (court of appeals' decision).) Therefore, the court analyzes this claim through the lens of a claim of ineffective assistance of appellate counsel. The court of appeals concluded that Evans's claim that his appellate counsel was ineffective for not raising the change of venue issue on appeal failed because Evans did not show that the trial court abused its discretion by denying the motion. (ECF No. 1-2 at 12.) In other words, because the underlying claim would have failed, appellate counsel was not ineffective for failing to raise it on appeal.

This court agrees. Even "[e]xtensive pretrial publicity does not, in itself, render a trial unfair and violate a defendant's right to due process." *Willard v. Pearson*, 823 F.2d

1141, 1146 (7th Cir. 1987) (citing *Dobbert v. Florida*, 432 U.S. 282, 303 (1977)). "In rare cases where pervasive and inflammatory pretrial publicity utterly corrupts the trial atmosphere, a court may presume the pretrial publicity prejudiced the accused." *Id.* Aside from those extreme instances, "a defendant must show pretrial publicity created actual juror prejudice against him." *Id.*

Although Evans's case had received some coverage in the local press, the trial court noted it was not inflammatory and it was long enough ago that the court suspected jurors would be unlikely to remember any details. (ECF No. 1-2 at 12.) Nonetheless, the court said it would revisit the issue if problems arose during jury selection. (ECF No. 1-2 at 12.) No such problems arose that could plausibly suggest a change of venue was necessary. (ECF No. 1-2 at 12.)

Evans has failed to show that "pervasive and inflammatory pretrial publicity utterly corrupt[ed] the trial atmosphere" or that "pretrial publicity created actual juror prejudice against him." *See Willard*, 823 F.2d at 1146. The trial court properly denied the motion for a change of venue. Consequently, appellate counsel was not ineffective for failing to raise the issue on appeal.

### 3.4.2. Heinze Letter

Jessica Heinze was an inmate at the Marinette County Jail at the same time as Evans. The trial court admitted into evidence a letter that Evans wrote to Heinze that Evans decorated with multi-colored hearts. In the letter Evans told Heinze, "Don't be

yelling in the vents to other guys unless you make it clear to them that … you're my girl … and that we're a couple now." (ECF Nos. 16-9 at 242-43; *see also* 16-10 at 165.) He continued, "I just don't want to learn that someone else moved in and took you away because … there [sic] better hope I don't get moved by them or see them in the hall or visitors' area because I will go off on them. I can still hit very hard, and I don't back down. … They don't have a chance in hell." (ECF No. 16-9 at 243-44.)

Evans argues that the trial court erroneously admitted this letter in violation of his due process rights. (ECF No. 1 at 9.) But Evans again presented this claim to the state courts only in the context of a claim of ineffective assistance of appellate counsel. (ECF No. 16-5 at 199-200.) Thus, it is through that lens that the court analyzes this claim.

The court of appeals rejected this claim, finding that the trial court properly exercised its discretion to admit the letter just as it had admitted Lorea Saunier's testimony. (ECF No. 1-2 at 13.) Additionally, Evans did not establish that the claim regarding his letter to Heinze was clearly stronger than those claims presented by appellate counsel. (ECF No. 1-2 at 14.)

Evans's letter to Heinze was much more recent—occurring while Evans awaited trial for the murder of his wife—than his conduct with respect to Lorea. Thus, the case for its admission was far stronger. As a result, a challenge to the admission of Lorea's testimony was clearly the stronger issue on appeal than a challenge to the admission of the letter to Heinze. Consequently, Evans's appellate counsel was not ineffective for not

raising it on appeal. Alternatively, the court agrees that the trial court properly exercised its discretion to admit the letter.

### 3.4.3.  Statements

Police officer Scott Ries was the first officer to respond to the shooting. He testified that, as Evans was handcuffed, Ries asked him, "What happened?" Evans responded that Dina was around when he was cleaning his gun. (ECF Nos. 16-8 at 172; 16-9 at 201-02.) This statement was significant because it was inconsistent with the version of events Evans offered at trial.

Evans argues that the trial court erred in admitting his statements to Ries. (ECF No. 1-1 at 4.) Although Evans denied making the statement, he argues that any statement he made was involuntary and obtained in violation of *Miranda*. (ECF No. 1-1 at 4.)

Evans exhausted his state court remedies with respect to this claim only in the context of a claim that appellate counsel was ineffective for failing to raise the issue on appeal. (ECF No. 1-2 at 9-11.) He presented the issue again in his second motion pursuant to Wis. Stat. § 974.06 (ECF No. 16-7 at 16-26), but as discussed below the state courts denied that motion on adequate and independent state law grounds. Therefore, the only means by which the claim may plausibly be properly before the court is through the lens of a claim of ineffective assistance of appellate counsel. But the distinction is immaterial because the claim fails either way.

At the hearing on Evans's motion to suppress his statement to Ries, Ries offered the context in which Evans made the statement. He explained that he responded to a call of a shooting. Dispatch advised him that the man who called 911 would be coming out of the home. Evans came out while talking on the phone. Ries and another officer had their guns pointed at Evans as they ordered him to keep his hands up, walk toward them, and then lay down. (ECF No. 16-9 at 171.) Ries and another officer went to handcuff Evans. According to Ries, as the other officer placed Evans in handcuffs:

> I asked the subject if he had any weapons on him, and he stated that he did not. From there I asked him, um, if there was anyone else in the trailer, and his response was that aren't you – aren't you going to send rescue? And I then asked him what had happened, and his response was she was around when I was cleaning my gun.

(ECF No. 16-8 at 172.) It was roughly 30 seconds from when Ries first saw Evans to when Evans made the statement about cleaning his gun. (ECF No. 16-8 at 172.)

When there is an immediate threat to public safety, police officers are not required to advise a person in custody of his rights under *Miranda* before asking him questions addressing that exigency. *See New York v. Quarles*, 467 U.S. 649, 655-56, 657-59 (1984). Although arguably implicit in the holding of *Quarles*, the Wisconsin Court of Appeals has explicitly held that there is a rescue exception to *Miranda*. "Simply stated, the 'rescue doctrine' is to the effect that, where the interrogation of a suspect is undertaken by the police for the paramount reason that information is being sought to save a life, the interrogating officers are justified in not impeding their rescue efforts by

informing defendant of his rights to remain silent and to the assistance of counsel."
*State v. Kunkel*, 137 Wis. 2d 172, 185-86, 404 N.W.2d 69, 74-75 (Ct. App. 1987) (quoting
*People v. Modesto*, 398 P.2d 753 (Cal. 1965)) (internal quotation marks omitted).

When Ries arrived on the scene, there clearly was an active emergency. A man
had called 911 seeking medical help, stating that he had just shot his wife in the chest.
(ECF No. 16-3 at 167-71.) It was immediately after Evans inquired about whether
medical help was on its way that Ries naturally asked Evans, "What happened?"
Information as to how a person came to need medical attention is essential to providing
effective aid.

Against this backdrop it was wholly reasonable for Evans's appellate counsel to
forego raising on appeal a claim that Evans's statement to Ries was inadmissible. The
issue was without merit and the statement was properly admitted at trial. Moreover,
there is no evidence that Evans's statement was involuntary. Consequently, the court of
appeals appropriately rejected this argument.

### 3.4.4. Mike Evans's Statement

At trial, Evans's brother Mike testified that he did not recall a statement he had
made to an investigator during the investigation of Dina's murder—namely, that, in
reaction to breaking-up with Lorea, Evans shot himself in the hand. (ECF Nos. 16-5 at
197-98; 16-9 at 491, 495-96, 502-03.) Instead of presenting the statement to Mike to
refresh his recollection, the trial court permitted the state to play for the jury Mike

Evans's recorded statement. After hearing the recording, Mike still testified that he did not recall having made the statement.

Evans argues that he "was deprived of his constitutional right to cross-examine the recording …" (ECF No. 1-1 at 6), which he characterizes as a violation of his fourteenth amendment right to due process (ECF No. 1-1 at 5).

Evans presented this issue to the court of appeals as a claim that his right to confrontation was infringed. (ECF No. 16-5 at 197-99; *see also* 16-5 at 523-25.) He argued that his appellate counsel was ineffective for failing to raise the issue on appeal. The court of appeals rejected it, noting, "A defendant's right to confrontation, however, is not denied when a witness who is available for and subject to cross-examination about an out-of-court statement testifies that he or she is unable to remember that statement." (ECF No. 1-2 at 13 (citing *State v. Rockette*, 2006 WI App 103, ¶ 26, 294 Wis. 2d 611, 718 N.W.2d 269).)

"[T]he Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens*, 484 U.S. 554, 559 (1988) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (internal quotation marks omitted)). As the Court said in *Crawford*, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.… The Clause does not bar admission of a statement so long as the declarant

is present at trial to defend or explain it." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).

Thus, in *United States v. Owens*, 484 U.S. 554 (1988), the Court found no violation of the defendant's right to confrontation when the court admitted the victim's prior identification of the defendant as the assailant despite the fact that, when the victim testified at trial, his impaired memory prevented him from again identifying the defendant. Even if the witness's lack of recollection is feigned, there is no constitutional problem in admitting the prior statement. *See United States v. Keeter*, 130 F.3d 297, 302 (7th Cir. 1997). The confrontation clause is satisfied "when the witness must look the accused in the eye in court" and is subject to cross-examination. *Id.*

Mike Evans testified at trial and was subject to cross-examination by his brother's attorneys. That satisfies the Confrontation Clause. Had this claim been raised on appeal, it would have failed. Consequently, appellate counsel reasonably chose not to raise it, and Evans was not prejudiced as a result.

### 3.5. Tracy Brabant's Testimony

Tracy Brabant, Dina's sister, testified that she overheard Dina tell Evans that she was divorcing him and that she wanted him to leave her alone. (ECF No. 1-1 at 5.) As recounted by the Wisconsin Court of Appeals:

> The sister testified that on the day he damaged the victim's property, Evans came to her apartment three or four times to talk to the victim. On the third or fourth visit, Evans stated to the victim that they were still married, and she responded in a loud and vocal manner, "[W]ell, not for

long because I am divorcing you and just…get that through your head and…leave me alone." Evans seemed very agitated and eventually left only to return later to do damage to the belongings.

(ECF No. 1-2 at 27, ¶ 10; *see also* ECF No. 16-9 at 148-49.) Evans argues that the trial court should not have allowed Brabant to testify about Dina's statement to Evans because it was hearsay and violated his right to confrontation. (ECF No. 1-1 at 5; *see also* ECF No. 16-6 at 29-36.)

The court of appeals concluded that Dina's statement was not hearsay because it was not offered for the truth of the matter asserted. Rather, it "was introduced to show the impact of [Dina's] statements on Evans' behavior." (ECF No. 1-2 at 27, ¶ 11.) Alternatively, the court concluded that, even if it was hearsay, the statement fit within the Wisconsin rule regarding excited utterances and Wisconsin's residual hearsay exception. (ECF No. 1-2 at 27-28, ¶ 12 (citing Wis. Stat. §§ 908.03(2), 908.045(6)).) Finally, the court concluded that the statement was non-testimonial and did not violate any right to confrontation. (ECF No. 1-2 at 28, ¶ 12 (citing *State v. Manuel*, 2005 WI 75, ¶¶ 60-61, 281 Wis. 2d 554, 697 N.W.2d 811).)

Dina's statement to Evans was not hearsay. It was not admitted for the truth of the assertion that Dina was divorcing Evans. Rather, it was offered to show how Evans reacted to Dina telling him that she was divorcing him. Evans became "very agitated and eventually left only to return later to do damage to the belongings." (ECF No. 1-2 at 27, ¶ 10.) How Evans reacted to Dina telling him she was going to divorce him was

probative of how he might react upon learning that Dina had obtained a restraining order against him. The statement was relevant to undermining Evans's defense that the shooting was an accident. Consequently, to the extent that Evans is arguing that his trial and appellate counsel were ineffective for not pursuing a claim that the statement was inadmissible hearsay, the court finds no error in the court of appeals' rejection of the claim.

Because the statement was not hearsay, it did not violate Evans's right to confrontation under the Sixth Amendment. "The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

Therefore, the court of appeals correctly rejected Evans's arguments with respect to Brabant's recounting of Dina's statements to Evans.

### 3.6. Prosecutorial Misconduct

At trial, Lorea Saunier testified that she observed Evans try to kill himself and that, once Evans was taken away by an ambulance, she went to school. (ECF No. 16-9 at 480-81.) She later went to the hospital with her mother because, Lorea was told, Evans was refusing to allow the medical staff to take blood from him unless Lorea was there to hold his hand. (ECF No. 16-9 at 482.) This testimony was admitted over Evans's objection after the prosecutor explained that it was being offered not for the truth of the

matter asserted but rather merely to explain why Lorea went to the hospital. (ECF No. 46-9 at 481-82.) The court ruled, "All right, for that purpose only." (ECF No. 16-9 at 482.)

Evans argues that the prosecutor engaged in misconduct by asking Lorea about Evans's suicide attempt despite the trial court having ruled that such evidence was inadmissible. (ECF No. 1-1 at 6.) The trial court, however, did not categorically exclude evidence of Evans's suicide attempt. Rather, the court stated only that Lorea "can't come in and just say people at the hospital called me and said get in here because we can't control him unless you're here to hold his hand." (ECF No. 16-8 at 312.) The court was merely observing that evidence presented in that manner would be hearsay.

There was no misconduct by the prosecutor. The court approved the prosecutor's questioning. Setting aside questions of whether Evans properly presented this claim to all levels of the Wisconsin judiciary, the claim is meritless and does not warrant habeas relief.

### 3.7. Claims Denied on Adequate and Independent State Law Grounds

In his second motion for postconviction relief pursuant to Wis. Stat. § 974.06 Evans offered various arguments as to why he believed his trial counsel was ineffective. Evans argued his trial counsel should have called Lorea's brother and mother as witnesses to rebut aspects of Lorea's testimony. Evans argues that his trial counsel also should have called his neighbors as witnesses, who allegedly would have testified that they did not hear an argument before the gunshot, contrary to the testimony of another

neighbor. He also argued his trial counsel should have objected to aspects of the prosecutor's voir dire and opening statement.

The court of appeals summarily rejected these arguments because they were raised for the first time in Evans's second motion for postconviction relief under Wis. Stat. § 974.06 (ECF No. 16-7 at 28-29.) "A defendant is barred from filing a second motion under Wis. Stat. § 974.06 unless the defendant provides a 'sufficient reason' for not having made the new claims in the earlier motion." (ECF No. 1-2 at 23 (citing *State ex rel. Dismuke v. Kolb*, 149 Wis. 2d 270, 274, 441 N.W.2d 253 (Ct. App. 1989); Wis. Stat. § 974.06(4)).) Evans's only argument as to why he did not include the claims in his first § 974.06 motion was that his appellate counsel was ineffective. According to the court of appeals, "that argument fails because his previous motion under § 974.06 was pro se. No counsel was ineffective in the litigating of that motion." (ECF No. 1-2 at 23.)

A federal court will not grant habeas relief if the state court's rejection of the claim rested on a matter of state law that was both adequate to support the judgment and independent of the federal question. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The state court must have "clearly expressed its reliance on an adequate and independent state-law ground." *Harris v. Reed*, 489 U.S. 255, 263 (1989).

It is well-established in Wisconsin that a defendant is ordinarily limited to one motion for post-conviction relief under Wis. Stat. § 974.06. Under what is commonly referred to as the *Escalona-Naranjo* doctrine, *see State v. Escalona-Naranjo*, 185 Wis. 2d 168,

517 N.W.2d 157 (1994), the state court may summarily dismiss the claims contained in a second § 974.06 motion unless the defendant shows "a sufficient reason for why the claims were not raised on direct appeal or in a previous § 974.06 motion." *State v. Lo*, 2003 WI 107, ¶44, 264 Wis. 2d 1, 665 N.W.2d 756.

It is clear that the Wisconsin Court of Appeals relied upon this principle, which is codified in Wis. Stat. § 974.06(4), to dismiss the claims raised for the first time in Evans's second motion under Wis. Stat. § 974.06. Thus, the court denied Evans relief based upon an adequate and independent state law ground. *See Perry v. McCaughtry*, 308 F.3d 682, 691-92 (7th Cir. 2002).

Consequently, Evans procedurally defaulted this claim. *See Coleman*, 501 U.S. at 750. Evans has not demonstrated that cause and prejudice exists to excuse his procedural default, *see id.*, or that a failure to consider his defaulted claims would result in a miscarriage of justice, *see House v. Bell*, 547 U.S. 518, 536 (2006). Consequently, a federal court is precluded from considering the merits of these claims.

### 3.8. Appellate Counsel

To the extent Evans defaulted his arguments regarding his statements to Ries, change of venue, Mike's recorded statement, Evans's letter to Heinze, prosecutorial misconduct, and failing to respond to the state's argument that the admission of expert testimony was harmless error, then, Evans argues, his procedural default should be excused because his appellate counsel was ineffective. (ECF No. 1-1 at 14.)

Because each of these claims fails on their merits, the court need not further consider this argument.

### 3.9. Post-Conviction Counsel

To the extent Evans defaulted his claims regarding the state's alleged plea offer, the failure to investigate the gunshot residue test results, the failure to request an evidentiary hearing regarding the toxicology report, the alleged conflict of interest, the withdrawal of the motion for a mistrial, the failure to call Sharon and Robert Saunier as witnesses, the failure to call Matthew and April Colangelo as witnesses, the failure to object to the prosecutor's voir dire, and the failure to object to the prosecutor's opening statements, then, Evans argues, that his post-conviction counsel was ineffective.

But there is no constitutional right to the effective assistance of counsel in any post-conviction proceeding other than an initial direct appeal. *Ross v. Moffitt,* 417 U.S. 600, 616 (1974); *Pennsylvania v. Finley,* 481 U.S. 551, 556 (1987). Moreover, Evans represented himself in proceedings subsequent to his direct appeal, and a party who chooses to represent himself cannot later claim that his representation was ineffective. *See Faretta v. California,* 422 U.S. 806, 834 (1975). Thus, this claim does not present a basis for habeas relief.

### 3.10.    Cumulative Errors

Evans argues that the cumulative effect of these errors resulted in a violation of his right to due process.

The court rejects this argument. The court finds no error in Evans's conviction.

**4. Conclusion**

Having concluded that Evans is not entitled to relief on any claim presented in his petition, **IT IS THEREFORE RECOMMENDED** that Evans's petition for a writ of habeas corpus be **denied**.

**IT IS FURTHER RECOMMENDED** that the court deny Evans a certificate of appealability, Evans having failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) whereby written objections to any order herein or part thereof may be filed within fourteen days of service of this order. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 10th day of October, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge